UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCEL NGOY LUBANGI,<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING, Field Office Director of U.S. Immigration and Customs Enforcement, Enforcement Removal Operations, Boston Field Office; TODD M. LYONS, Acting Director U.S. Immigration and Customs Enforcement; KRISTI L. NOEM, U.S. Secretary of Homeland Security<br><br>Respondents. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1:26-cv-10435-IT<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

February 12, 2026

TALWANI, D.J.

Petitioner Marcel Ngoy Lubangi is a citizen and national of the Democratic Republic of Congo (the "DRC"). Am. Pet. ¶ 2 [Doc. No. 8]. Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") in Maine on January 23, 2026, and has remained in custody since that time. Id. ¶¶ 1, 5. Petitioner challenges his detention by ICE as violative of the Immigration and Nationality Act and his due process rights under the Fifth Amendment. Id. ¶¶ 45–66.

I.   Background

On January 28, 2026, Petitioner filed a Petition for Writ of Habeas Corpus [Doc. No. 1] with this court, followed by an Amended Petition [Doc. No. 8] on February 2, 2026. Petitioner asserts that he entered the United States on March 18, 2022, Am. Pet. Ex. 1 [Doc. No. 8-1], was apprehended upon entry, and was granted a seventeen-day period of parole, pursuant to 8 U.S.C.

§ 1182(d)(5). Am. Pet. ¶ 20 [Doc. No. 8]. Petitioner applied for asylum on January 24, 2023, and his asylum application remains pending. Id. ¶ 8.[1]

ICE arrested Petitioner in Maine on January 23, 2026, and then transported him to an ICE field office in Burlington, Massachussetts. Id. ¶¶ 1, 5. Petitioner filed his Petition [Doc. No. 1] while he was detained in Massachusetts. Am. Pet. ¶ 12. Subsequent to his filing, ICE transported Petitioner to Burlington, Kentucky. Id. ¶ 5. Petitioner asserts that ICE has provided no explanation "for its decision to [redetain Petitioner and] change his custody status." Id. ¶ 6. Petitioner requests either immediate release or a bond hearing pursuant to 8 U.S.C. § 1226. Id. ¶ 10.

Respondents assert that Petitioner has no authorization to remain in the country because his parole expired, and asserts further that he is subject to expedited removal proceedings, Opp'n 1–2 [Doc. No. 9], despite having been in the country for more than two years after parole expired on April 4, 2022, Am. Pet. Ex. 1 [Doc. No. 8-1]. Respondents maintain that 8 U.S.C. § 1225

---

[1] Under the expedited removal statute, § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer[.]" 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." Id. § 1225(b)(1)(B)(iii)(I). Detention during the expedited removal period under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed."
Id. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 110 (2020).

Here, Petitioner was detained upon entry to the United States in 2022, pursuant to § 1225(b)(1)(B)(iii)(IV). After DHS determined that he had a "credible fear of persecution" upon return to the DRC, the government released Petitioner on parole and permitted him to apply for asylum. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); see Am. Pet. Ex. 1 [Doc. No. 8-1], Ex. 2 [Doc. No. 8-2].

2

mandates detention during the pendency of Petitioner's asylum application process and that this detention is constitutional. Resp'ts' Opp'n 1–2 [Doc. No. 9]. However, Respondents acknowledge that this court "recently determined on similar facts that a non-citizen, despite a prior release from custody pursuant to [8 U.S.C.] Section 1182(d)(5) parole, is entitled to a bond hearing in Immigration Court upon redetention under the Fifth Amendment." Id. 2–3 (citing Roldan Roldan v. Moniz, 2026 WL 161552, at *3 (D. Mass. Jan. 21, 2026)).

II.     Analysis

The court follows its reasoning in its prior decision and those of courts across the country[2] in determining that a protected liberty interest arose when Respondents released Petitioner on parole on March 18, 2022. See Morrissey v. Brewer, 408 U.S. 471, 481–82 (1972) (describing a parolee's interest "in his continued liberty."); Perry v. Sindermann, 408 U.S. 593, 601–03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). The Fifth Amendment's Due Process Clause extends to all persons in the United States, regardless of status, see A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025), and Petitioner's "liberty is valuable and must be seen as within the protection of" due process, Morrissey, 408 U.S. at 482. The Mathews balancing test is the proper analytic tool to determine the quantum of process due to Petitioner before he is "deprived of . . . [his] liberty," U.S. CONST. amend. V., the court addresses how much process should be

---

[2] In order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), many courts have found that the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered. See, e.g., Jarrett v. Raycraft, 2026 WL 319044, at *10–11 (W.D. Michigan Feb. 6, 2026) (applying Mathews balancing test and granting habeas petition for redetained expired parolee); Zavorin v. Wamsley, 2026 WL 309733, at *3–4 (W.D. Wash. Feb. 5, 2026) (same); Solano v. Mason, 2026 WL 311624, at *17–19 (S.D.W. Va. Feb. 4, 2026) (same); Selis Tinoco v. Noem, 2025 WL 3567862, *5–7 (E.D. Cal. Dec. 14, 2025) (same); Mata Velasquez v. Kurzdorfer, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (same).

afforded. See Mathews v. Eldridge, 424 U.S. 319 (1976); Hernandez-Lara v. Lyons, 10 F.4th 19, 27–28 (1st Cir. 2021) (applying Mathews balancing test in context of noncitizen detention).

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334–35.

Regarding the first factor, Petitioner's liberty interest is fundamental. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). With respect to the second, the risk of an erroneous deprivation of Petitioner's liberty is high where he has not received a bond or custody redetermination hearing. The decision to grant parole is within DHS's discretion, affording no additional procedural safeguards. See Tenemasa-Lema v. Hyde, __ F. Supp. 3d __, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025). Finally, regarding the third factor, the court recognizes that "[t]he prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." Hernandez-Lara, 10 F.4th at 32 (citations omitted). However, the administrative cost of providing a bond hearing is relatively minimal. See Hilario M.R. v. Warden, Mesa Verde Det. Ctr., 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025) (citing cases).

DHS previously determined that Petitioner did not present a flight risk or danger to his community in 2022 when he was released on parole following his credible fear determination. Am. Pet. Ex. 1 [Doc. No. 8-1]. Respondents do not assert that any change to this assessment is

warranted based on the several years that Petitioner has lived and worked in Maine. A bond hearing would allow Repsondents, at minimal cost to DHS, to determine whether Petitioner's re-detention is necessary. Ultimately, the court finds that the Mathews factors weigh in favor of relief, that Petitioner's detention without a bond hearing violates his due-process rights, and that a bond hearing is an appropriate and minimally invasive additional procedure to ensure those rights. 424 U.S. at 334–335.

### III. Conclusion

The Amended Petition for Writ of Habeas Corpus [Doc. No. 8] is therefore GRANTED as follows: Respondents shall return Petitioner to the District of Massachusetts within 72 hours of the docketing of this Order. Respondents shall release Petitioner from custody or, in the alternative, following Petitioner's arrival in Massachusetts and no later than February 20, 2026, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226. If the immigration judge declines to conduct a bond hearing based on Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), Respondents shall so advise the court so that this court may conduct the bond hearing. Any decision by the immigration judge to retain Petitioner in custody following a bond hearing pursuant to 8 U.S.C. § 1226 shall set forth the reasons for the continued detention.

Respondent shall provide a status report no later than February 23, 2026.

IT IS SO ORDERED.

February 12, 2026                                /s/ Indira Talwani
                                                 United States District Judge